EMMA MARWEDEL *vs.* EMILY W. COOK & others.

Suffolk.    November 14, 1890. — June 29, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Negligence — Owner of Building — Lighting of Stairways — Due Care.*

The owner of a building let it for office purposes to various tenants, retaining control of the halls, stairways, and elevator. The stairways were winding, and so constructed that the natural light was partially cut off, and artificial light, for which provision was made, was necessary at times to render them safe. During an afternoon in March a woman went in the elevator to the fifth floor on business, and having finished the same at about half past five o'clock, after the elevator had stopped running for the day, proceeded to descend by the stairway, with which she was unacquainted, then the only mode of egress. A tenant of the office visited by her, seeing that the gas was not lighted, cautioned her to be careful. As she was going down from the fourth to the third story it grew dark, but, although unable to see, she went on, holding to the hand-rail with both hands, and in some way at a turn in the stairs lost her hold, fell, and was injured. *Held,* in an action against the owner of the building for such injuries, that the questions whether the defendant was negligent in not lighting the stairways, and whether the plaintiff exercised due care in descending under the circumstances, were for the jury.

TORT, for personal injuries occasioned to the plaintiff by falling down the stairs of a building in Boston owned by the defendants. Trial in the Superior Court, before *Pitman,* J., who submitted the case to the jury upon the evidence, on the questions of the defendants' negligence and of due care on the part of the plaintiff, and, after a verdict for the plaintiff, the defend-

ants alleged exceptions.   The nature of the evidence appears in the opinion.

The case was argued at the bar in November, 1890, and afterwards, in June, 1891, was submitted on the briefs to all the judges.

*L. S. Dabney & H. G. Allen*, for the defendants.

*H. N. Sheldon*, for the plaintiff.

BY THE COURT.   The following opinion was prepared by Mr. Justice WILLIAM ALLEN, and after his death was adopted as the opinion of the court by a majority of the Justices.

The defendants let offices in their building, retaining control of the halls, entries, stairways, and elevator, which were not let. The plaintiff, while going down the stairs from an office in the building, fell, and was hurt.   There was evidence tending to prove that she fell in consequence of the darkness of the stairway.   There was no evidence of negligence by the defendants except in not lighting the stairway, and if they owed to the plaintiff the duty of lighting it, there was evidence of negligence on their part.   The general duty which the defendants owed to third persons, in respect to the passages of the building, is well expressed in the instructions to the jury at the trial: "If the defendants leased rooms in the building to different tenants, reserving to themselves the control of the halls, stairways, and elevator, by and through which access was to be had to these rooms, and the general lighting arrangements of those passages, then the defendants were bound to take reasonable care that such approaches were safe and suitable at all times, and for all persons who were lawfully using the premises, and using due care, so far as they ought to have reasonably anticipated such use as involved in and necessarily arising out of the purposes and business for which said rooms were leased."

The plaintiff was using the stairs by the implied invitation of the defendants, and the question of the defendants' negligence turns upon whether it was their duty to persons so using them to provide artificial light at the time the plaintiff fell.

The stairs were constructed in a well, three sides of which were closed.   At the back of the well, which was about nine feet from the entrance, or open side, the stairs turned and passed down on the third side of the well to the front or open side.

The turn was made by six stairs called "winders," which were nearly triangular in form, being about four inches wide on the inside where the hand-rail was, and about two feet wide at the other end against the wall, where there was no rail.   There was no skylight to the well, but it received natural light indirectly from a skylight in the elevator well, which was by the side of the stairway, and through glass in the doors of offices. Provision was made for artificial light.   The jury may well have found, upon the evidence, that the stairs were unsafe unless lighted, and that the construction of the building and stairway was such as to cut off the natural light, and at times when it was full daylight, and when the stairway was properly in use, to render it unsafe without artificial light, and that the plaintiff, while going down the stairs from the fourth to the third floor, fell at the turn of the stairs at the back of the well in consequence of the stairway not being artificially lighted, and that the stairway was then unsafe for want of such light.   There was evidence tending to show that the elevator had ceased running for the day, and the stairway was the only mode of passing from floor to floor of the building; that the use of it for that purpose at the time the plaintiff was injured was intended by the defendants; and that the gas provided by the defendants for lighting the stairway was not then lighted.   The jury were justified in finding that the defendants owed to the plaintiff the duty of providing such light as would render the stairway reasonably safe, and that they failed in that duty.

The defendants contended that, if the use of the stairs was dangerous on account of the darkness, the plaintiff was not in the exercise of due care in using them.   We think that, under the circumstances, this would not necessarily prevent the jury from finding that the plaintiff was in the exercise of due care.   She went up in the elevator to the office on the fifth floor, where she had business, and when she had finished her business there was no way of going down except by the stairs.   The evidence tended to show that the first flight of stairs she went down was sufficiently lighted by natural light; that the tenant of the office which she had visited saw that the gas was not lighted, and cautioned her to be careful for that reason; that after she had gone down the stairs from the fifth to the fourth floor, and while

going down those leading from the fourth to the third floor, it grew dark and she was unable to see, but went on; holding to the hand-rail with both hands; and that in some way at the turn of the stairs she lost her hold and fell. Had the danger been obvious to her before she started, and had there been other ways of egress, there would be great force in the argument. But the evidence tends to show that she was unacquainted with the stairway, and might not have known that there was not as much light all the way down as at the upper flight. It cannot be said, as matter of law, that she was negligent in not going back for assistance when it became dark. That fact called for greater care, and she testified in regard to the care she used. We think it was for the jury to say whether she was negligent in going on under the circumstances, exercising the degree of care in doing so which they may have found upon the evidence that she did exercise.                    *Exceptions overruled.*