HENRY C. HATHAWAY *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Bristol.   October 27, 1902. — November 25, 1902.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Negligence*, Contributory.

A consignee of horses, who was bound by his contract with a railroad company to unload them from the cars, sought at night in a freight yard for the car in which they had arrived. He attempted to pass through a freight house but finding it filled with merchandise proceeded to walk along an ill lighted platform, which was attached to the side of the freight house next the tracks and was used for the transfer of goods between the freight house and the cars, until coming to a narrower part of it he fell off and was injured. He sued the railroad company, alleging negligence in failing to light the platform at the point where it became narrower. A verdict was ordered for the defendant. *Held,* that the verdict was ordered rightly. The plaintiff, instead of declining to find his way in the dark without a guide, chose to incur the obvious risk of walking along an ill lighted platform not intended for a passageway.

TORT, by a consignee of horses transported by the defendant, for personal injuries caused by falling from a platform attached to a freight house of the defendant at New Bedford alleged to have been unguarded by barriers and insufficiently lighted, while the plaintiff at night was looking for the car in which his horses had arrived. Writ dated November 15, 1900.

In the Superior Court *Fessenden*, J. ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*A. B. Collins*, (*A. E. Clarke* with him,) for the plaintiff.

*F. S. Hall*, for the defendant.

BARKER, J. . The plaintiff was required, by the contract under which the horses were brought over the railroad, to unload them from the car. This involved his entering the freight

yard and going to the place in it where the horses were to be
taken from the car.   There was a public street at the south end
of the yard, and a gate gave access to the yard from the street.
In the yard were three freight houses, extending northerly, the
ends of which were contiguous.   On the westerly sides of the
houses were platforms designed and used for the transfer of
goods between the houses and cars.   These platforms were of
unequal widths, those upon the side of the farther houses being
narrower than the platform of the first house.

The plaintiff entered the yard through the gate and went to
the office in the house nearest the street, and there paid the
freight bill.   He then asked the night watchman if he was going
out to deliver the horses, and receiving an affirmative answer,
said, " Well, come on," to which the watchman replied, " Well,
you go ahead out there, and I will be out in a few moments."
This was in the night, and the plaintiff had no lantern.   The
car was upon the tracks and beyond the freight houses.   The
plaintiff passed from the office into the first house, and instead
of walking through the houses, went through an open door upon
the platform and walked down the platform toward the place
where he expected to get the horses.   The platform upon which
he first came from the door was about twice as wide as those
farther along.   There was evidence tending to show that the
freight house from which he went upon the platform was so
filled with merchandise that he could not walk through it, but
this evidence was contradicted.   The platforms were not well
lighted and the plaintiff, in attempting to follow them, walked
off the side at a point beyond the jog, and fell.   The negli-
gence charged was a failure to light the platform at the point
where it was narrowed up.   The plaintiff often had been at the
freight yard and knew its general arrangement, but testified that
he never had had his attention called to the narrowness of the
platform.   He usually went through the freight houses when
going to receive horses, and would have done so that night but
for finding them full of goods.

We are of opinion that the verdict for the defendant was
ordered rightly.   The platform was not a way provided by the
defendant for persons to go to cars in the yard, nor was it held
out by the defendant to be such a way.   It was made and fitted

for another purpose, namely, the transfer of goods to and from cars on the adjoining tracks. So also the freight houses through which the plaintiff had gone on previous occasions were not designed as a way to the yard, but for the reception, storage and handling of goods, and filling a house with goods could not be said to be the obstruction of a way designed to give access to cars in the yard.

If the plaintiff, being required to unload the horses, was entitled to have some reasonable method of access to the car containing them afforded him, and might have declined to attempt to find his way to the car in the dark and without a guide, he did not so decline. On the contrary he voluntarily sought to find a way, and when he found his approach through the houses obstructed by goods, he voluntarily chose as a way a series of platforms which he knew were made for the handling of goods, and which obviously were so dark as to make dangerous his use of them to gain access to the car he was seeking. If this was not negligence, it was a voluntary acceptance of the danger of walking off the platform while on his journey to the car. The platform was a proper one for the purposes for which obviously it was intended, and the plaintiff was not injured by reason of any hole in it, or any defect in its surface, or any obstruction left upon it, or any breakage of the structure. Choosing to use it in the darkness as a way, he voluntarily incurred the risk of walking off the edge of it and of falling.

The facts that the platform was not designed or held out as a way and that there was no defect in its structure having regard to the purposes for which it was made and used, distinguish the case from those relied on by the plaintiff. In *Holmes* v. *North Eastern Railway*, L. R. 4 Ex. 254, L. R. 6 Ex. 123, 40 L. J. (N. S.) Ex. 121, the plaintiff was upon a flagged walk used by customers as a way, and which he must use to get his coals. The statement of Cleasby, B. in *Wright* v. *London & North Western Railway*, 1 Q. B. D. 252, at page 257, that *Holmes* v. *North Eastern Railway* " established that where a man is on the premises of a railway company for the purpose of carrying into effect a contract of carriage and delivery, and gets the assent of the company (as indicated by the usual course of business) to assist in the delivery, the plaintiff is entitled to redress if the

part of the premises where he is engaged is in a condition which is dangerous to the persons engaged upon it, and injury ensues to him," must be read in view of the fact that the place where the person was hurt was designed for use in the way in which he was using it, and that he was there by an invitation which held the place out as one to be used for that purpose. It did not go to the extent of allowing a recovery because any place to which the plaintiff of his own choice might go in the railway grounds might be dangerous.

In *Wright* v. *London & North Western Railway*, L. R. 10 Q. B. 298, 1 Q. B. D. 252, the plaintiff was negligently run into by a train while assisting to move the car in which was his heifer, which was to be delivered to him. In *Sharrock* v. *London & North Western Railway*, 1 C. P. D. 70, the plaintiff was specially directed to a siding outside the freight yard, and while proceeding to it his horse became frightened and fell down an unfenced bank. In *Marney* v. *Scott*, [1899] 1 Q. B. 986, the plaintiff was hurt by the breaking of a ladder which was his way to the hold of a vessel.

In *Bradford* v. *Boston & Maine Railroad*, 160 ·Mass. 392, *Toomey* v. *Sanborn*, 146 Mass. 28, and *Marwedel* v. *Cook*, 154 Mass. 235, the plaintiffs were hurt upon places designed and fitted for foot travel.

It is contended that it should have been left to the jury to say whether the platform was the passageway which the defendant had provided for the plaintiff. The arrangement of the yard makes it plain that there were other means of approach to that part of it beyond the freight houses where cars to be unloaded by the consignees were left, and while the platform was designed for other purposes than a passageway, there is no evidence that it was allowed to be used for the latter purpose. Whether or not it might have been found that the plaintiff's situation allowed him to use the platform for a passageway, we think that in entering upon it as he did he used it at his own risk, so far as its construction, shape and its condition as to light were concerned.

*Exceptions overruled.*