## CAULFIELD v. SABA.*
### No. 14236.

Court of Appeal of Louisiana. Orleans.
Dec. 19, 1932.

A. D. Danziger and Albert B. Koorie, both of New Orleans, for appellant.

Samuel J. Goodman, of New Orleans, for appellee.

WESTERFIELD, J.

This is a suit by a tenant against her landlord for physical injuries due to a fall alleged to have been caused by a defect in the leased premises, under article 2695, Rev. Civ. Code. There was judgment below in favor of plaintiff in the sum of $1,000, and the defendant has appealed.

Mrs. Caulfield, the plaintiff in this case, was one of a number of tenants of the defendant, Joseph Saba, the owner of the premises No. 638 Royal street. She occupied a bedroom and a kitchen on the third floor, and her son and daughter-in-law occupied quarters on the second floor of the Royal street property. Mrs. Caulfield, during the evening of March 22, 1931, about 8 o'clock, left her daughter's room on the second floor, where she had been visiting, for the purpose of emptying a slop jar in the toilet, which was located at the end of a long hall. She succeeded in reaching the toilet, but on her way back, while groping in the dark, fell down a stairway, the opening of which it was necessary to pass in order to get back to her daughter's room. She attributes her fall to the darkness of the passageway and to the fact that her right foot was caught in a hole in the floor at a point near the stairway, causing her to trip, lose her balance, and fall down the flight of stairs. The negligence of the defendant, Saba, is alleged to consist in the fact that he had failed to cause the hallway to be properly illuminated, so as to make it safe for his tenants to use it, and also because of the presence of the hole in the floor, which constituted a defect in the leased premises, against which, under article 2695, R. C. C., defendant is bound to indemnify the plaintiff in damages.

From the photographs and architectural sketches in the record it appears that the hole in the floor, which some of the witnesses refer to as a crack and others as a hole, is about 7 inches long and from 1⅜ inches wide at its widest to ½ inch wide at its narrowest. It is located very near the wainscoting on the side wall where the stairway enters the hallway and not in a direct line with plaintiff's necessary course in returning to her daughter's bedroom. Mrs. Caulfield testifies that she was wearing slippers without heels and that one of her slippered feet caught in this hole, causing her to fall.

It is our opinion, however, that she is mistaken, as it seems to us most unlikely that a small crevice, such as this is shown to have been, could have tripped Mrs. Caulfield, particularly since, at the time, she was wearing a soft slipper without a heel. We believe that her fall was due to the darkness. The fact that she was carrying a heavy slop jar in her hand may have contributed somewhat, but the proximate cause of her injury was the darkness, which she testifies was extreme. She was groping her way along, holding the slop jar, and it may be that when she reached the stairway she lost her balance, because her other hand, with which she had been feeling her way along the wall, was suddenly thrust into the open space of the stairway, causing her to lose her equilibrium and fall. But, in any event, we have no doubt that the proximate cause of her injury was the effort to traverse the unlighted hallway of the tenement.

*Rehearing denied January 16, 1933.

The question, therefore, is whether the defendant, Saba, was under any legal obligation to illuminate the passageways in his tenement house. It is admitted that there is in Louisiana no law and no jurisprudence supporting the affirmative of this proposition, unless it can be found in the codal article which has been referred to, R. C. C. 2695, which reads as follows:

"The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."

Under the common law the rule is that "in the absence of statute or agreement a landlord is under no legal obligation to light common passageways for the benefit of tenants or their visitors." 36 C. J. § 891, p. 214. See, also, 25 A. L. R. 1312. In the case of Marwedel v. Cook, 154 Mass. 235, 28 N. E. 140, it was held:

"The general duty which the defendant owed to third persons in respect to the passages of the building is well expressed in the instructions to the jury at the trial: 'That if the defendants leased rooms in the building to different tenants, reserving to themselves the control of the halls, stairways, and elevator, by and through which access was had to these rooms, and the general lighting arrangements of those passages, then the defendants were bound to take reasonable care that such approaches were safe and suitable at all times, and for all persons who were lawfully using the premises, and using due care, so far as they ought to have reasonably anticipated such use as involved in and necessarily arising out of the purposes and business for which said rooms were leased.'"

But in a later case, Polansky v. Heller, 241 Mass. 484, 135 N. E. 572, the contrary seems to have been held, as appears from the following quotation from the syllabus:

"In the absence of statute or agreement, a landlord is under no legal obligation to light common passageways for the benefit of tenants or their visitors, though the original construction of the building created a dangerous condition, by reason of the closeness of front and rear stairs."

In a number of other states the common law has been changed by statute so as to impose the duty upon the landlord of lighting dark passageways, but these statutes apparently refer to conditions which render artificial light necessary in the daytime, and in the case of Brugher v. Buchtenkirch, 29 App. Div. 342, 51 N. Y. S. 464, it was held, in the absence of a statute, that where the construc-

tion of the property "is so unusual or peculiar as to render artificial light essential to reasonable safety," it is the duty of the landlord to illuminate such passageways. But on the whole there can be no doubt that the rule is well settled and to the contrary. In Carpenter v. Scheifele, 134 Misc. 637, 236 N. Y. S. 299, 300, for example, it was said:

"That there is no common-law obligation to maintain such lights is too well settled by numerous authorities to require their citation here."

But it is contended that in Louisiana the situation is different, since landlords are held to greater responsibility here than elsewhere, and it is pointed out that at common law a landlord is not liable for injuries due to defective conditions unless the conditions may be due to his fault (36 C. J. 214); whereas, under the law in Louisiana, the liability of the landlord is absolute. Breen v. Walters, 150 La. 578, 91 So. 50; Boutte v. N. O. Terminal Co., 139 La. 945, 72 So. 513. However, counsel confesses his inability to find any case in Louisiana directly in point and nothing nearer the principle than the dictum in Glain v. Sparandeo, 119 La. 339, 44 So. 120, 121, where it was said:

"The lessor, we think, is as much bound for the safety, for ordinary use, of the necessary approaches and exits to and from the apartments which he lets as for the safety of the apartments themselves."

In that case the tenant fell over a defective balustrade on the second floor, a situation quite different from that obtaining here. If Mrs. Caulfield had fallen in the daytime because of darkness due to the peculiar construction of the building, a different case might be presented. However, we do not believe that our law imposes any duty upon the landlord to illuminate hallways used in common by a number of tenants during the nighttime. There is no express declaration to that effect and no necessary implication. As a matter of fact, it is doubtful whether a light in the hallway would be in the interest of the comfort of the tenants, whose doors open upon such hallway, whatever may be said of its convenience, since darkness is more conducive to repose than light. If it be said that it must reasonably be contemplated that tenants would be required to use a hallway in order to get to a common toilet during the night, as well as the day, our answer is that in going to and fro during the night a tenant should provide herself with some form of portable light, such as a candle, lamp, or flash-light, or assume the consequences of her failure to take this measure of protection.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered that plaintiff's suit be dismissed at her cost.

Reversed.