VICTORIA JUST, Plaintiff and Appellee, *v.* ANGEL MORENO ET AL., Defendants and Appellants.

No. 8849.   Argued March 16, 1944.—Decided May 17, 1944.

*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for
appellants. *Brown, González & Newsom,* and *Carlos J. Faure*
for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The defendants are engaged in the business of letting apartments in a building which belongs to them in Santurce. They leased one of said apartments to Mr. Samuel E. Badillo. The stairs common to all the apartments had no light when Mr. Badillo occupied his apartment but afterwards another tenant complained of the failure to have a light on the stairs, and the lessors placed a light thereon which, according to the evidence, had the switch on the main floor. An employee of the lessors had instructions to put the light on when it was getting dark and to put it off at 10:30 at night. About November 27, 1941, the plaintiff paid a visit to Mr. Badillo at about 8:00 P.M., and upon reaching the building she realized that the light was not on, but it did not prevent the plaintiff and her friends from going up to Mr Badillo's apartment. They stayed till 10:30 P. M. At that time the stairs were still dark and Mr. Badillo, who accompanied them to the door of his apartment, warned them to be careful not to fall on account of the darkness. Neither the plaintiff nor her friends asked Mr. Badillo for artificial light, they lighted no matches and neither did Mr. Badillo offer any. The plaintiff took hold of the banister, but upon reaching one of the landings of the stairs, she missed a step and fell, as a result of which she sustained a fracture of the humerous. The lower court rendered judgment in favor of the plaintiff for $1,500 as damages and for the costs.

The court decided that in Puerto Rico there was no law which bound the landlord of an apartment to illuminate the

stairs common to different apartments during the nighttime; but it held that upon furnishing the light on the stairway, the defendant had assumed an implied responsibility to provide a light and that by keeping it dark on the night of the occurrence, they had committed an act of negligence which was the proximate cause of the accident. It further held that the plaintiff did not commit contributory negligence by going up to Mr. Badillo's apartment even though the stairs were dark or by failing to obtain artificial light to go down.

The appellants do not challenge the amount granted in the judgment. They limit the controversy to the alleged errors committed by the lower court, (1) in holding that the defendants were liable for the accident because they had impliedly assumed the obligation to provide a light for the stairway during the nighttime, and (2) in holding that the plaintiff was not guilty of contributory negligence in going down a stairway completely dark with which she was not familiar.

▮ It does not appear from the evidence that there was any contractual obligation on the part of the defendants to provide a light during the nighttime on a stairway used in common by all the tenants. There is no express statute which imposes on the landlord such a duty, and neither was it alleged or proved that said light had to be furnished by the landlords according to the use and custom of the place. *People* v. *Central Cambalache*, 62 P.R.R. 530.[1] We must, therefore, resort to §1444 of the Civil Code, 1930 ed., to determine whether such a duty on the part of an apartment-house landlord may be inferred from its language. Said Section provides:

"The lessor is obliged:
"1. To deliver to the lessee the thing wich is the object of the contract.

---

[1] In no other contract does the local use and custom exercise such a powerful influence as in lease contracts, to the extent that many leases, except in that which it is essential and constant, are said to be exclusively governed by custom. 10 Manresa, *Comentarios al Código Civil*, p. 465.

"2. To make thereon, during the lease, all the necessary repairs in order to preserve it in condition to serve for the purpose to which it was destined.

"3. To maintain the lessee in the peaceful enpoyment of the lease during all the time of the contract.

"＊ ＊ ＊ ＊ ＊ ＊ ＊"

Subdivision 2 of the above-quoted Section, which has some analogy to the question involved herein, limits the obligation of the landlord to the making of all the necessary *repairs* in order *to preserve* the subject matter of the contract in a serviceable condition for the purpose to which it was destined. The intent of the legislator in using in said Section the words "repairs" and "to preserve it" could not have been to impose on the landlord the duty to make improvements or add to the thing leased facilities which did not exist when the contract was perfected. Construing this same Section, the Supreme Court of the Philippines held that the word "repairs," as used in paragraph two of §1554 of the Philippines Civil Code, implies the putting of something back into the condition in which it was originally, and not an improvement in the condition thereof by adding something new thereto. *Alburo* v. *Villanueva,* 7 Phil. Rep. 277. When treating of the scope of the duty to make repairs imposed on the landlord by §1554 of the Spanish Civil Code, equivalent to §1444 of our Code, Manresa states the following:

"It follows that the word repairs must be understood as meaning all cases of accessory work and structure in order to obtain the purpose desired in so far as due to its importance it may be called a repair." [2] 10 Manresa, *Comentarios al Código Civil,* p. 469.

In the Argentine Civil Code the same meaning is given to the word "repairs," with respect to the duty which is im-

---

[2] The word "repair" ("*reparación*") is defined by the *Diccionario de la Academia Española* as: "the act or process of repairing," and the verb "to repair" ("*reparar*") "to remedy, to fix or to mend the damage undergone by a thing."

posed on the landlord by law to make such repairs. Section 1516 of said code provides:

"The obligation to keep the thing in a good condition consists in, making the repairs which the deterioration of the thing may require in case of a fortuitous event or of an act of God or if it was caused by the quality of the thing itself, or by vice or defect thereof, no matter what its nature or if it arises from the natural effect of the stipulated use or enjoyment thereof or if it should happen through default of the lessor, its agents or employees."

Since the stairway in question was used in common by the different tenants, it seems more logical that the landlord and not the tenant should keep the same lighted; but there is nothing to prevent the tenants from assuming that obligation. Anyhow, since neither the law nor the contract entered into with the tenant imposes such duty on the landlord, and since it was neither alleged nor proved that the use and custom of the place impose it, it is not within the powers of the court to demand its fulfillment on the part of the landlord. To this effect Manresa states:

"Likewise any person who leases or buys a farm should consider whether or not it suits him and after having seen the same and entered into a contract, the lessor complies with his duty by delivering the thing in the same condition in which it was at the time of the lease." Op. and Vol. cit., p. 467.

We have already seen that in the present case, when the contract of lease was entered into, there was no light, and without requiring it from the landlord, Mr. Badillo accepted the leased property. The question involved herein is not novel in Louisiana, whose Civil Code provides by its §§2692 and 2693 that the lessor is bound to maintain the thing in a condition such as to serve for the use for which it is hired and to make during the continuance of the lease all the repairs which may become necessary in order to duly comply with such duty. In *Caulfield* v. *Saba*, (La. 1932) 144 So.

652

907, it was held by the Court of Appeals of Louisiana that no duty was imposed upon the landlord to illuminate the hallway used in common by a number of tenants to go to the toilet during nighttime, either by express declaration to that effect, or by necessary implication under the Civil Code.

Such is the rule which in the absence of a statute [3] governs in the United States, England, and Canada. There is only one exception to said rule and that is when the stairway or passageway used in common has been constructed in such a manner as to render it dangerous. In that case alone is the landlord under the obligation to maintain lighted said stairway or passageway under his control. . See the cases cited in the annotations in 97 A.L.R. 220, 223; 75 Id. 154, 166; 58 Id. 1411, 1419; 39 Id. 294, 302; and 25 Id. 1275, 1312.

However, in the present case there is a circumstance which in the absence of contributory negligence, imposes on the defendants the duty to repair the damage, after reaching the conclusion that the failure to furnish a light in the stairs was the proximate cause of the accident. It is a common doctrine in all jurisdictions that any person who assumes the duty of performing an act which has not been imposed by law or by contract or by the custom of the place is under the obligation to perform the same with due diligence and if upon performing such act, either by commission or omission, he causes damage to another through his own fault or negligence, he is bound to repair the damage caused, inasmuch as the law presumes that once he assumes the duty to perform the act he does it with the intention of submitting himself to all its legal consequences. 12 Manresa, *Comentarios al Código Civil*, p. 548 *et seq.* This is the same doctrine of the implied obligation contained in the common

---

[3] The rule has been changed by statute in other jurisdictions, such as New York, New Jersey, and Connecticut. In Ohio there are municipal ordinances to that effect.

law invoked by the lower court and by the appellee but which in the civil law is nothing more than an innominate quasi contract.

We have already seen that in the instant case the defendants had voluntarily consented to furnish a light on the stairs and had instructed their employee to keep the stairs lighted every night until 10:30. On the night of. the occurrence, however, the stairs were not lighted and no circumstance was either alleged or proved to justify the failure to do so. It was precisely the failure to have a light which prevented the plaintiff from seeing where she was placing her foot and such a misstep caused the fall which resulted in the injuries suffered by the plaintiff. Therefore, the failure to furnish the light was the proximate cause of the accident.

Was the plaintiff guilty of contributory negligence? From the evidence it appears that on a previous occasion she had visited Mr. Badillo's apartment, that on that occasion she arrived about 8 o'clock and at the time of leaving, about 9 o'clock, the stairs were lighted. On going up the stairs on the night of the accident, the plaintiff could have reasonably presumed that at the end of the visit the stairs would already be lighted. But when she left the apartment, at about 10:30, the stairs remained unlighted; Mr. Badillo, who accompanied her to the door of his apartment, offered her no light but simply warned her to be careful, which she did by taking hold of the banister with one hand as is usually done in such cases. There is no showing as to the degree of intimacy existing between the plaintiff and Mr. Badillo in order that she could ask him to give her an artificial light which he probably did not have since he did not offer it although he warned her to be careful because of the darkness of the place.

Considering the foregoing circumstances, we agree with the judge of the court a quo that the plaintiff was not guilty

of contributory negligence. Since the proximate cause of the accident was the negligence of the defendants and since the plaintiff was visiting the building at the time of the accident for a legitimate purpose, the defendants are under the obligation to compensate her for the damage caused.

The judgment must be affirmed.