*Municipal Court of the City of Boston*
No. T-22202

**JAMES E. PROUT**

**v.**

**JACOB HORNSTEIN**

Argued: June 11, 1971 - Decided: June 16, 1971

*Present:* Adlow, C. J., Canavan, Foster, JJ.
Case tried before Gorrasi, Spec. J.

**Adlow, C. J.** Action of tort to recover for injuries suffered by the plaintiff while working as a window washer on the building owned by the defendant at 47 Winter Street, Boston. The defendant relied on the defense of contributory negligence.

**At the trial there was evidence that** on January 18, 1967, the defendant, Jacob Hornstein, was the owner of the premises at 47 Winter Street, Boston. He was in control of the entrance, lobby, hallway and the exterior of the building, including the window frames. The tenants agreed to keep the window panes clear and to clean them at their discretion.

The plaintiff was a self-employed window cleaner with a background of 30 years experience. On the day in question the plaintiff arrived at the building on Winter Street at 7:45 A.M. and saw an employee of the defendant who introduced him to a tenant on the second floor who operated a tea room. The latter en-

gaged the plaintiff to wash the windows of his tea room on the Tremont and Winter Street sides of the building. The plaintiff first washed the windows on the Tremont side, and then proceeded to wash the windows on the Winter Street side, starting with the inside.

There were three windows on the Winter Street side. Preparatory to stepping out onto the window sill, the plaintiff opened windows one (1) and three (3) of that set so that he could exit through window one (1), wash window one (1), and then wash windows two (2) and three (3) and then re-enter the interior through window three (3). He then stepped out onto the window sill which was eighteen to twenty feet above the sidewalk and washed the exterior of window one (1). Windows one (1) and three (3) were pivot windows and the plaintiff, when opening window one (1) observed that it did not open fully all the way. The plaintiff knew this fact when he went out onto the window ledge. Window one (1) did, however, open up wide enough to allow the plaintiff to exit without difficulty.

The plaintiff in moving to the exterior attached the left hook of his safety belt to the anchor connected to the outside of the left frame of window one (1). He then stepped out onto the window sill, facing inward, and attached the right hook of the safety belt to the lower section of the same anchor. When he finished window one (1), he unhooked the right

hook of his safety belt and reached around and to his right so as to attach the belt to the anchor on the outside left frame of window two (2). However, there was no anchor on the outside of the left frame of window two (2) and the plaintiff returned to his original position in front of window one (1).

At the time the plaintiff was on the ledge, the temperature was twenty degrees above zero. He was moderately attired to give him freedom and range of movement in the performance of his work. When he realized that the outside left frame of window two (2) did not have a window anchor, he immediately attempted to re-enter the building through window one (1). However, window one (1) was stuck, and he was unable to move said window in either direction. He then attempted to attract the attention of the persons inside the room by tapping on the window, but without success. He shouted for help to people on the sidewalk, but received no response. He continued his efforts to attract attention for a considerable period. Because of the cold weather, the sharp wind and the light attire, the plaintiff became cold, he could not move, his knees were cold and he decided not to remain where he was, but to move to window three (3) which he knew was open. He briefly considered breaking the glass pane of window one (1) but felt it involved danger to himself and to the people passing below from the falling glass. He had to pass window two

(2) to reach window three (3). He unhooked the safety belt from the anchor on window number one (1) and started to go to window number three (3). When he got in front of the left of window number two (2), where there was no belt anchor, the plaintiff attempted to raise his right foot to get over the loop as he did his right knee gave way causing him to fall over the ledge to the sidewalk, eighteen to twenty feet below, suffering serious injury.

There was evidence to the effect that the Rules and Regulations of the Division of Industrial Safety of the Department of Labor and Industries of the Commonwealth of Massachusetts provided in Bulletin No. 21, § 15 that there be window anchors attached to the side frames of each window. It was undisputed that at the time of the accident, and shortly thereafter, the outside left frame of window two (2) had no window anchor. Because of the manner in which windows one (1) and three (3) pivoted, the plaintiff was unable to determine whether or not the frame of window two (2) had anchors for safety belts until he was actually on the window sill. The defendant was unaware that any of the anchors were missing prior to the plaintiff's fall.

At the close of the evidence the plaintiff filed fifteen requests for rulings, many of which the court disposed of by referring to its findings

of fact. These findings are substantially as follows:

"I find that the plaintiff slipped, lost his balance and grip and fell down to the sidewalk.

I find that the missing double anchor was not the proximate cause of the plaintiff's accident.

I find the plaintiff was contributorially negligent."

There was a finding for the defendant and being aggrieved by the findings and rulings of the court the plaintiff brings this report.

The court properly ruled that:

1. One who lets offices in a building and retains control of the halls, entries, stairways, and the exterior of the premises is bound to use reasonable care that the same are safe at all times for persons lawfully using same. *Marwedell* v. *Cook,* 154 Mass. 235.

2. As a matter of law the Revised Rules and Regulations for the Prevention of Accidents in Window Cleaning have the force and effect of law. *Guinan* v. *Famous Players-Lasky Corp.,* 267 Mass. 501.

3. The violation of the rule is evidence of negligence with respect to all the consequences which said regulations were intended to prevent.

■ Such being the law, what are the undisputed facts? First, is the fact that the anchor for the safety belt was missing on the left side of the frame of window number two (2). Se-

cond, that the plaintiff, a window washer, was one of the class for whose protection the rule requiring safety anchors was promulgated. We have here a violation of law which is inextricably involved in the plaintiff's accident. It remains for us to determine whether the defendant's failure to conform with the safety rule was a proximate cause of the accident and whether the plaintiff's conduct precludes recovery by reason of contributory negligence.

Since the parties were virtually in agreement on the facts, it is our duty to determine whether the trial court's findings of fact were warranted by the evidence.

On the undisputed facts the plaintiff stepped from a place of safety to a place that was dangerous. As soon as the plaintiff discovered the hazard in which he was involved by reason of the defendant's failure to comply with the law, considerations of self-interest urged him to regain the interior of the building at the earliest possible moment. Of course, if the anchor for the safety belt were where it should have been, there would have been no accident. But it was not there to attach the safety belt. This was the fault of the defendant and not of the plaintiff. That person should be liable who was the main cause of the accident. *Salisbury* v. *Herchenroder*, 106 Mass. 548. *Parker* v. *Barnard*, 135 Mass. 116. *Gordon* v. *Bedard*, 265 Mass. 408.

So far as the defendant was concerned his

failure to conform with the rule requiring a safety belt anchor was a proximate cause of what happened. It was error for the court to find otherwise.

Next we consider the question of the plaintiff's due care. If the fact that a safety belt anchor on window number two (2) were missing had come to the attention of the plaintiff, and, despite this, he had stepped from the interior out onto the window ledge, he would clearly be wanting in due care. But the plaintiff was not aware of this defect. There was no assumption of risk. When the plaintiff moved out onto the ledge he assumed that proper anchors were attached to the window frames. Not till he had finished window number one did he discover that the anchor was missing on window number two (2). As soon as he discovered this fact he took steps to return to the interior of the building. But he found it impossible to open window number one (1), which had apparently become stuck while the plaintiff washed its exterior surface. But the intervention of this condition does not relieve the defendant of responsibility for the neglect which occasioned the plaintiff's predicament. *Milbury* v. *Turner Center System,* 274 Mass. 358. See: *Salisbury* v. *Herchenroder,* 106 Mass. 458. The intensely severe cold began to affect him. He rapped at the window to gain the attention of persons inside, but no one heard him. He called to the street below, but

there was no response. There were three alternatives for him to consider in determining what to do. He could have broken the window, but he feared harm to himself and to the pedestrians below: he could have remained where he was and awaited the discovery of his predicament by someone, but in the freezing weather, and being lightly clad, there was the danger of freezing; or he could have moved along the ledge to window number three (3) which was open. It would be foolhardy to suggest which of these expedients represented a careful choice. All that we can say is that in the perilous situation in which he found himself he did the best he could. That he failed to save himself and suffered injury does not mean that he was wanting in due care. ''A choice may be mistaken and yet prudent.'' per Holmes, J. in *Kane* v. *Worc. Consolid. St. Ry.*, 182 Mass. 201, 202.

 Considering that the plaintiff was suffering from exposure, he did the best he could under the circumstances. In determining the issue of due care it is important that we appraise the plaintiff's conduct in the context of the conditions under which the event occurred. One who is acting under stress and impulsively, with a view to self-preservation, cannot be held to such wisdom of choice as would be expected if he had time for deliberation. *Green* v. *Haverhill & Amesbury St. Ry.*, 193 Mass. 428, 430.

The predicament in which the plaintiff found himself wast he direct consequence of the defendant's failure to comply with the law. The plaintiff had no notice of this default. He did not discover it until after he had reached a place of danger. What happened thereafter cannot be judged on the basis of what a reasonably prudent man might decide at his leisure. *Baltimore & Ohio R. Co.* v. *Goodman*, 275 U.S. 66. We are confronted here with an extremely precarious situation in which a window cleaner on a narrow ledge finds himself without the benefit of a safety belt. It would be unfair to the plaintiff to deny him a recovery for want of due care under the circumstances. If he tried to cross the ledge without the benefit of a safety belt it was because of the defendant's neglect to provide a safe place for him to work as the law required.

The proximate cause of this accident was the defendant's negligence. There was no contributory negligence.

**Finding for defendant vacated.**

**Finding for plaintiff to be entered, and cause to be remanded to the trial judge for assessment of damages.**