### FOX *v.* MICHIGAN CENTRAL RAILROAD CO.

1. CARRIERS—INJURY TO PASSENGER—INTOXICATED PASSENGER—CONTRIBUTORY NEGLIGENCE.

   A passenger in a state of beastly intoxication is not chargeable with contributory negligence in going on the platform of a moving train so as to bar recovery for injuries received from a fall from the train.

2. SAME—SUFFICIENCY OF EVIDENCE.

   In an action against a railroad company for injuries to an intoxicated passenger, caused by his falling or being thrown from the platform of a train while in motion, evidence examined and *held* to justify a refusal to direct a verdict for defendant. GRANT, J., dissenting.

3. RELEASE—JOINT TORT FEASORS—INTOXICATED PASSENGER—INJURIES.

   Where plaintiff was injured while intoxicated by falling from a railroad train, and his wife thereafter sued to enforce her statutory right of action against the saloonkeepers, and their bondsmen, from whom plaintiff had obtained the liquor, which cause of action plaintiff and the wife thereafter released, such release did not discharge any right of action plaintiff had against the railroad company for the injuries sustained.

   138 MICH.—28.

Error to Calhoun; Hopkins, J.   Submitted October 20, 1904.   (Docket No. 56.)   Decided December 14, 1904.

Case by Arthur E. Fox against the Michigan Central Railroad Company for personal injuries.   There was judgment for plaintiff, and defendant brings error.   Affirmed.

*S. S. Hulbert* (*O. E. Butterfield* and *Henry Russel*, of counsel), for appellant.

*Hatch & Page*, for appellee.

MOORE, C. J.   The plaintiff, while intoxicated, stepped off the platform of a moving train belonging to defendant. He sued, and recovered a judgment for the injuries he received.   The case is brought here by writ of error.

No error is assigned in relation to the admission of testimony or the charge of the court.   The only one assigned is:

"The court erred in not sustaining defendant's motion to take the case from the jury upon the grounds stated in said motion."

The reasons stated in the motion are:

"(1) Because the contributory negligence of the plaintiff bars his recovery, because, among other points, as a matter of law, he was not in the exercise of due.care or ordinary care in going out upon and being on the platform of the moving train while he was in that intoxicated condition; and because the brakeman did act with sufficient promptness to satisfy the law, the plaintiff not being entitled to throw upon the brakeman the risk, hazard, and necessity of accurately and instantly judging plaintiff's intoxicated condition, and of acting effectively in regard thereto; and because the negligence of the company was not gross, wanton, and reckless.   *   *   *

"(2) The release by the defendant to William G. Noneman and others, in evidence in this case, is a complete bar to this action."

1.  It is said:

"When a situation involving an instant choice of acts—

of alternatives—is forced upon A. by the negligence of another, A. is not held, at his peril, to choose and act correctly, and with that same careful judgment which he would have exercised if he had time for a deliberate, instead of instant, determination.  *  *  *  Under the circumstances, the company can only be held for gross, wanton, and reckless negligence.    Under all the circumstances, the failure of the brakeman to instantly and correctly sense the situation, especially when considered with his subsequent prompt effort to deter plaintiff from going out on the platform—an act which did not necessarily involve danger to plaintiff—cannot be considered as gross, wanton, or reckless."    Citing sections 103, 104, Baldwin on Personal Injuries.

The testimony of Miss Bestel and Mr. Hoskins, which is not contradicted, is to the effect that at the station, just before taking the train, plaintiff "was very much under the influence of liquor; beastly drunk; staggering around." The plaintiff was a witness, but claimed he was so drunk when he was on the train and at the time of the accident that he could remember but little about what occurred. His testimony throws very little light upon the situation. The only testimony giving a connected account of what occurred is the testimony of one of the passengers (Mr. Anderson), which in part is as follows:

"Saw him on March 7, 1902, in the Michigan Central depot at Marshall, about noon.    My attention was called to him because he was staggering and very intoxicated. In every way, he looked like an intoxicated person.    I was going to Battle Creek on the noon train that day, and did go on that train.    Saw plaintiff on the train, but did not see him get on.    First time I noticed him was after we reached Nichols Station, or was about leaving that station. I was sitting in the front end of the smoker, about the third or fourth seat from the front, on the left-hand side.  *  *  * He was beastly drunk.    He was staggering, and his face was covered with drool, and all over his mouth, and his clothes were displaced.    I saw the brakeman at that time. I called the brakeman's attention.    He came up to the front of the coach as we were leaving Nichols Station, and I called his attention to plaintiff, who was trying to get out of the door.    I said:  'That man ought not to be allowed

on the platform.' He didn't say anything. I saw he was not going to start to stop him, and I started for the door. The brakeman certainly must have heard me, because he turned around and looked at him when I spoke. The brakeman had time, after I spoke to him and told him that plaintiff ought not to be allowed on the platform, to have intercepted him, if he had acted at once. I got to the door, and started to open the door, and the brakeman came right behind me. Plaintiff was on the platform, and just as I opened the door he fell off the platform under the coach on the left-hand side. He looked, apparently, to have gone under the wheels, but I cannot say. I said to the brakeman: 'You ought to stop this train. That man is run over.' He said, 'O, no; he is not;' and he didn't stop the train."

On the cross-examination he testified:

"Q. Mr. Anderson, how soon after Mr. Fox went to the door and started out on the platform did you start after him? A. Just a very few seconds. I do not know how many.

"Q. And the brakeman was practically right on your heels? A. He was back of me; yes, sir.

"Q. Going the same way that you were? A. He had started back through the car, and, as I started toward the door, followed me toward the place where Fox was. * * * At the time I started out on the platform after plaintiff, the plaintiff was trying to open the door. He was staggering so he could hardly get it open. He grabbed for the knob and missed it, and grabbed for it again. He was so drunk he could hardly stand up.

"Q. This was after you told the brakeman that he ought not to let that man out on the platform? A. No, sir; he was trying to get on the platform, but he had not got out yet.

"Q. You saw plaintiff fumbling with the door knob, or groping for it and trying to get it, and then you spoke to the brakeman, that he ought not to let him get out? A. I said that he ought not to be allowed on the platform. I did not say he should not do it.

"Q. Then Fox, continuing in his efforts, got the door open, and you started after Fox? A. No, sir; Mr. Fox started to open the door, and had it nearly open, and then I started to stop him from going out.

"Q. And the brakeman after you? A. Yes, sir.

" *Q.* It was all a matter of a few seconds ?  *A.* Yes, sir."

On the redirect examination he testified :

" *Q.* You stated the brakeman started after you called his attention, that he looked at Fox, and that he started back ?  *A.* Yes, sir; he did not start toward Mr. Fox. He started back.  I think he had time to reach Fox before he got on the steps, when I called his attention to him.  It was only two or three seats back.  I spoke out loud, and I am sure he heard me, because he looked at Fox, and paid no further attention to him.  He said nothing until he got out on the platform.  I asked him to stop the train, and he said, ' No, he is not hurt,' and we could not see him from the platform."

The testimony of the policeman who helped place the plaintiff on a stretcher when he was found lying on the ground and was removed to the hospital was to the effect that "plaintiff was then so drunk as not to realize his condition, and was not able to help himself."  This testimony is uncontradicted.  The defendant showed upon the trial that an unsuccessful effort had been made to produce the brakeman as a witness at the trial.

The authorities cited by counsel for defendant do not throw much light upon the question.

Van Zile on Bailments & Carriers, § 653, reads:

" It is a general rule that a passenger must exercise ordinary care and diligence in avoiding injury.  But while this is true, it may be said that it is the duty of the carrier to warn the passenger as to dangerous situations, and, failing to do so, the carrier will not be permitted to defend upon the ground of contributory negligence upon the part of the passenger in an action for an injury received because of such danger.  This duty to warn the passenger against danger does not apply, of course, to every case. The circumstances of the particular case are to be taken into consideration.  As, for example, where a passenger cannot be said to understand the danger of his situation, or where the passenger is a young person, inexperienced, and not aware of the danger in which he is placing himself, or one who is somewhat demented or even intoxicated, or deaf and dumb or blind—such persons require

more attention, and the duty of the carrier is to extend to them greater care than to the ordinary passenger. These, of course, are but examples. Each case must stand upon its own particular circumstances."

In Cooley on Torts (2d Ed.), p. 768, it is said:

"Where the business of a carrier is to transport both persons and property, his obligation and his consequent liability in respect to the two are different. For the safe transportation of the property he is responsible as insurer, with the exceptions already stated, but in the case of passengers he only undertakes that he will carry them without negligence or fault. But as there are committed to his charge for the time the lives and safety of persons of all ages and of all degrees of ability for self-protection, and as the slightest failure in watchfulness may be destructive of life or limb, it is reasonable to require of him the most perfect care of prudent and cautious men, and his undertaking and liability as to his passengers goes to this extent: That, so far as human foresight and care can reasonably go, he will transport them safely. He is not liable if injuries happen from sheer accident or misfortune, where there is no negligence or fault, and where no want of caution, foresight, or judgment would prevent the injury. But he is liable for the smallest negligence in himself or his servants. And this liability is applied with great strictness, as well as great justice, when he undertakes to transport passengers by the powerful and dangerous agency of steam."

In *East Saginaw City R. Co.* v. *Bohn*, 27 Mich. 503, Justice COOLEY, speaking for the court, said:

"That the duty of the railway company not to permit persons to ride in unsafe places on their cars is the same, and rests upon the same reasons, with their duty not to make use of vehicles wholly unsafe, appears to me entirely clear. There are, without doubt, some limitations upon that duty, growing out of the manner in which their business is usually and properly conducted, but it does not become necessary to consider those limitations at any length in the present case. Such carriers could not, in reason, be required to be insurers of their passengers against all dangers, nor, perhaps, to employ a person to keep watch upon their passengers to protect them against

dangers resulting from their own folly or neglect. Perhaps it is admissible that the driver should be also conductor, in which case he could not be expected to watch against persons falling off the rear platform or crawling out of the window. If, however, it was dangerous for passengers to stand or sit on the front platform, where the driver himself would be, it would not only be his right and duty to notify any who might occupy it of the danger, but, if they were of an age not to be likely to understand the risk, or able to judge for themselves, or if he knew them to be insane or otherwise unable to exercise discretion, the duty would not be fully performed without an enforcement of proper regulations to compel their occupying positions less exposed."

In *Kingston* v. *Railway Co.*, 112 Mich. 40, Chief Justice LONG, speaking for the court, said:

"The court charged the jury:

" ' If you find that, at the time he was upon this place, he was intoxicated, then he could not recover in this case, because in the case of an intoxicated man the company was not expected and the law would not require of this company that it should guard an intoxicated man against injury, standing in the place he was standing.'

"This charge was erroneous. It was asserted by the plaintiff that he was pushed off or thrown off by defendant's conductor, and the fact that he was intoxicated would not give the conductor the right to push him off. The question of his intoxication was a matter to be taken into consideration by the jury in determining whether or not the plaintiff was in the exercise of due care in standing upon the running board while he was in that intoxicated condition, but his condition would be no excuse to the company if its conductor negligently and wrongfully pushed him off.

"In Thomp. Neg. p. 1174, it is said:

" 'Intoxication on the part of the plaintiff at the time of the accident does not constitute negligence, in law, warranting a nonsuit or a peremptory instruction for the defendant, but is a circumstance to go to the jury on the question of contributory negligence.'

"This seems to be the general rule. *Stuart* v. *Machias Port*, 48 Me. 477; *Alger* v. *City of Lowell*, 3 Allen, 402."

See, also, *Pittsburg, etc., R. Co.* v. *Caldwell*, 74 Pa. St.

421; *Brennan* v. *Railroad Co.*, 93 Mich. 156; *Louisville, etc., R. Co.* v. *Johnson*, 108 Ala. 62.

In the case at bar it is shown beyond any reasonable question that the plaintiff, while beastly drunk, was making an effort to go from a place of safety to a place of danger. The attention of the brakeman was called to the situation by a passenger who saw the danger. The brakeman looked and the jury might have inferred he saw the condition of the plaintiff. Instead of going to the drunken man and attempting to prevent his exit from the car, he went in the other direction. It was not until after the passenger, seeing the failure of the brakeman to act, attempted to prevent the danger, that the brakeman made any effort in that direction. This effort came too late.

Under the facts disclosed by the record and the law we have cited, we do not think it can be said the court erred, as to this feature of the case, in refusing to direct a verdict for the defendant.

2. This defense is based upon the following facts: Previous to the trial of the case at bar, Mrs. Fox, the wife of plaintiff, sued the saloonmen who sold Mr. Fox the liquor which made him intoxicated, and their bondsmen. Afterwards, and before the case was tried, the case was settled, and Mr. Fox joined in a receipt releasing the defendants in that action from liability. It is now said the saloonmen who were defendants in that case and the defendant in this case are joint tort feasors, and the release of one released all. The trouble with this proposition is that the wife had a cause of action given to her by the statute against the saloon keepers and their bondsmen, while the plaintiff had no such cause of action, and in joining in said release he did not release any right of action he might have against the railroad company.

Judgment is affirmed.

CARPENTER, MONTGOMERY, and HOOKER, JJ., concurred with MOORE, C. J.

GRANT, J. (*dissenting*).     Plaintiff purchased a ticket and took defendant's train at Marshall, where he lived, to go to Battle Creek, a few miles distant.   He had voluntarily become intoxicated when he purchased his ticket and entered the train, but was able to walk to and board the train without any difficulty, so far as this record shows.   He entered the water-closet, which was close to the door.   As the train reached Nichols Station, a short distance from Battle Creek, he emerged from the closet, stood with his back to the interior of the car, opened the door, went upon the platform, and, through his intoxication, either fell or jumped from the train, supposing the train was leaving Battle Creek, and was seriously injured.   He brought suit against the railroad company and recovered a verdict.   He alleges in his declaration that he was in a state of intoxication; that his condition was known to the defendant; that the defendant, through its employé, a brakeman, had been notified by a passenger of his condition; that said brakeman was able to prevent the plaintiff from going out upon the platform, but that he made no attempt to do so, and " willfully, wantonly, maliciously, and negligently permitted said plaintiff to pass out of said door and onto the platform of said moving train."

I find it unncessary to discuss what duty a railroad company owes to a passenger who enters a train in an intoxicated condition.   See *Strand* v. *Railway Co.*, 67 Mich. 381.   Admitting that the carrier owes a peculiar duty to such a passenger, that duty is only required when the carrier is notified or has knowledge of the intoxicated condition of the passenger.   In my judgment, no such notice or knowledge is shown by the evidence in this case.

Plaintiff, after testifying to his drinking just before boarding the train, and to going into the water-closet, said:

" I came out of the water-closet and came to the car door, and came out because I thought I heard the conductor hollering, ' Battle Creek.'   I thought the car had started, and was leaving Battle Creek.   Came out of the

closet and opened the door and started to get off the train. That was my intention. Came out on the platform. The car was in motion. I knew it to be a fact that the car had started. Then I fell off. I do not remember whether I stepped on the steps or not."

The only testimony relied upon to show that the brakeman knew plaintiff's condition is that of Anderson, a fellow passenger. The brakeman, after diligent search, could not be found, and we have not the benefit of his testimony. According to the testimony of Anderson, the brakeman was passing through the car, with his back to the door. Anderson saw the condition of plaintiff, as it appeared from his face, and dress, and action, as he emerged from the closet. The brakeman did not see it. It is but a step or two from the closet to the door. Plaintiff stood with his back to Anderson and to the brakeman, when Anderson spoke and said: "That man ought not be allowed on the platform." Anderson did not tell the brakeman why he made the statement. There was no more in the statement to indicate that he was intoxicated than that, in the judgment of Anderson, he was insane, or for some other reason should not be allowed to go out of the car. The only reason Anderson had for believing that the brakeman heard him was that he turned and looked towards the plaintiff. What was there in the action or looks of plaintiff as he stood by the door, with his back to the brakeman, to indicate that he was in a state of intoxication or that he needed assistance? Was the brakeman bound to instantly leave his other duties and accept the statement of Mr. Anderson as true, at the risk of imposing liability upon his employer? Mr. Anderson, seeing that the brakeman did not immediately respond to his statement, got up and started for the door. The brakeman seeing him do this, instantly followed, and, before either could reach him, although they were only about three seats back, plaintiff had opened the door, gone out upon the platform, and fallen or jumped off. All this was done in a few seconds.

It would be a rule, in my judgment, not justified by reason or by authority, to say that the brakeman was bound to act instantaneously on such a statement made by a passenger. Plaintiff was sober enough to buy a ticket, walk to and board the train, walk in and out of the closet, go to the door, open it, and walk out upon the platform. He thought he had heard the name of the station where he desired to alight called, and it is very probable that he had heard the brakeman announce that as the next station. If the brakeman heard Mr. Anderson and looked around at plaintiff, there is no testimony to show that at that instant there was anything to indicate to the brakeman that plaintiff was intoxicated. Was the brakeman bound to act instantly upon the statement by a passenger that another ought not to be allowed upon the platform, and to assume that such passenger was drunk, and to rush instantly to his rescue? I cannot so hold.

I think the judgment should be reversed, and no new trial ordered.