WALTER EARL SEAVY, Respondent, v. I. X. L. LAUNDRY COMPANY, a Corporation, NELLIE M. REED, BURT A. REED and ARTHUR F. LASHER, Appellants.

No. 3280

January 7, 1941.

108 P.(2d) 853.

*Platt & Sinai,* for Appellants.

*L. D. Summerfield* and *A. R. Schindler,* for Respondent.

## OPINION

By the Court, ORR, J.:

The respondent recovered a judgment in the Second judicial district court of the State of Nevada, for injuries alleged to have been sustained by him by stepping into a hole in the floor of a toilet situate on the premises of the appellant company, which said hole was filled with hot steam and hot water which escaped from a pipe which ran beneath the floor of the said toilet, the hole having been cut in the floor for the purpose of repairing a joint on said pipe.

The facts found by the trial court disclose that appellant company had leased to the Reno Towel and Linen Service, Incorporated, a portion of the building occupied by the said appellant company; that incident to such occupancy of said building and appurtenant to the facilities of the Reno Towel and Linen Service, Incorporated, the employees and business guests of said Reno Towel and Linen Service had use of the toilets, in common with the employees of said appellant company. Respondent,

in making a business call on the Reno Towel and Linen Service, Incorporated, indicated that he desired to use a toilet, and was directed by a Mr. McPherson, manager of the Reno Towel and Linen Service, to the place. The room was poorly lighted, according to the testimony of respondent, although the white toilet bowl was visible, and he walked over to the said bowl, and his left leg fell into an open, uncovered hole which was filled with hot water and steam, and as a result his leg was badly burned. Respondent was a stranger in the building, it being the first time he had been in the said toilet room.

The I. X. L. Laundry Company was incorporated under the laws of the State of Nevada on March 25, 1927. On the 29th of April 1937 the written consent of the stockholders to the dissolution of the said corporation was filed, but following the filing of the certificate of dissolution the said corporation continued as the record owner of the real estate and building where the laundry business was conducted under the name of "I X. L. Laundry Company." No certificate was filed with the county clerk giving notice that individuals were conducting the business under said name of "I. X. L. Laundry Company."

Reno Towel and Linen Service, Incorporated, reserved quarters in the said I. X. L. Laundry Company building before it was erected, and as soon as the building was completed they moved in. The tenancy was from month to month. The business conducted by the Reno Towel and Linen Service was a rental service to commercial concerns of linens, etc. Said Towel and Linen Service called for the linens and had them laundered by the I. X. L. Laundry Company, and then delivered them. About seven people were employed by said Reno Towel and Linen Service.

Before the building was completed and at the time the Linen Service was negotiating for space in the I. X. L. Laundry Company's building, the toilet facilities

were indicated and pointed out to the representative of the said Linen Service. Two toilet rooms were provided, one for men and one for women. After the Linen Service moved into the said I. X. L. Laundry Company's building, the toilets were used in common by the employees of the I. X. L. Laundry Company and of the Linen Service, and on some occasions by people transacting business with the said Linen Service. The toilet rooms were under the exclusive control of the I. X. L. Laundry Company. At the start the tenant furnished towels and a cabinet for towels, and said towels were laundered by the I. X. L. Laundry Company, but later on all of this service was performed by the landlord. No formal understanding between the landlord and tenant as to the use of the toilet rooms was had.

As hereinbefore stated, a hole was cut in the concrete floor of the toilet room, alongside the toilet bowl, for the purpose of permitting the repacking of an expansion joint of a pipe which carried steam under that part of the floor. The hole was there from the time of the erection of the building, but was ordinarily covered with a piece of board laid loosely over it. As time went on this hole was enlarged, in order to permit further work to be performed on the pipe.

There was a light in the toilet room, which could be turned on by means of a switch near the door, which was customarily done by a person entering the said toilet room, and turned off upon his leaving. The light was used to indicate whether the toilet room was in use.

There is evidence to the effect that during the spring of 1937 and prior to the accident in this case this hole in the floor was uncovered and unprotected on several different occasions.

At the time the respondent entered the toilet room in May 1937, the door was already open, and there was no steam in the room sufficient to affect visibility or to indicate the presence of hot water.

Two of the assignments of error made by appellant,

namely, that the findings are not supported by the evidence, and that the findings proffered by appellant should have been adopted, can be disposed of by saying that there is substantial evidence in the record supporting the findings of the trial court, and for that reason the said findings should be sustained, and that the findings proposed by the appellant were pursuant to his theory of the case, which theory was rejected by the trial court. However, this rule does not apply to the question of whether or not the evidence establishes, as a matter of law, that the appellant was contributorily negligent. We have examined the evidence to determine that point.

The action of the trial court in overruling the demurrer should be sustained, for the reason that respondent's theory of the law as applied to the facts in the case is correct.

■ It is contended that inasmuch as the I. X. L. Laundry Company filed a certificate of dissolution with the secretary of state before the accident occurred, the corporation was not a proper party defendant; that a judgment could not be rendered against it; and that the directors only could be sued as trustees of the corporation; further, that defendants Nellie M. Reed and Burt A. Reed could not be. sued personally. Respondent, answering this contention, distinguishes between what the corporation itself may do after dissolution and what a third person may do with reference to suing such a corporation, and we think the distinction made is logical. A corporation is a creature of statute, and statutory provisions control the power of corporations after dissolution. Such a situation must be held in mind in giving the necessary weight to the general statements from other jurisdictions.

■ The Nevada statutes which control are sections 1664, 1665 and 1666, N. C. L. 1929. More than one provision is made in section 1664, and the provision contained therein that for three years after dissolution a

corporation shall continue as a body corporate for the purpose of prosecuting and defending suits is in no manner controlled by the language in the section which deals with other matters.

■ As to the contention that the action could only be brought against the directors as trustees, under sections 1665 and 1666, we think said sections are limited to the settling of the ordinary affairs of a corporation, and that section 1666 expressly limits suits against the directors as trustees to "debts owing by such corporation at the time of its dissolution." The respondent had a claim for unliquidated damages, and this claim arose after the filing of the certificate of dissolution. But the filing of the certificate of dissolution does not mean the complete dissolution of the corporation, because of the fact of its being continued for the period of three years for certain purposes, and it is after the expiration of the three years that the corporation no longer exists for any purpose. Such is the time the authorities cited by appellants refer to when they state that after dissolution the corporation has no powers whatsoever.

"The dissolution of a corporation implies its utter extinction and obliteration as a body capable of suing or being sued, or in whose favor obligations exist or upon which liabilities are imposed." 7 R. C. L. 735.

"When a corporation is dissolved * * * it no longer exists for any purpose, unless there is some statutory provision continuing its existence * * *." 8 Fletcher Cyc. Corp. 9173, sec. 5564.

. "The legislature has power to authorize the prosecution of suits in the corporate name after a corporation has ceased to exist for general purposes, and may even authorize an action on an obligation taken after dissolution." 7 R. C. L. 743.

The conflict of opinion which appears in the authorities is in jurisdictions where there is no statute continuing the existence of the corporation and providing how such suits shall be prosecuted, such as we find in section

1664 N. C. L. See 8 Fletcher Cyc. Corp. 9200, sec. 5605; Porter et al. v. Tempa Mining & Milling Co., 59 Nev. 332, 93 P. (2d) 741.

A corporation or those representing it have been held liable after dissolution for torts committed prior to dissolution, where the statute continued the existence of the corporation for the purpose of settling and winding up its affairs. 14A C. J. 1159; 19 C. J. S., Corporations, sec. 1732.

■ As to the contention that the defendants Nellie M. Reed, and Burt A. Reed could not be sued personally in this action, we find that after the filing of the certificate of dissolution, and contrary to the provisions of section 1664, the I. X. L. Laundry Company continued to operate as usual, and no certificate of doing business under a fictitious name was ever filed. Where the business of a corporation, old and new, is continued as usual, and is not limited to settling the affairs of the corporation, then the stockholders become personally liable. 14A C. J. 1189; 19 C. J. S., Corporations, sec. 1760; 8 Fletcher Cyc. Corp. 9188, sec. 5589.

■ The appellant further contends that the judgment is excessive for the reason that double payments were made, certain items having been recovered from the California industrial commission. We do not think that appellants are entitled to be heard on this point, because no motion for a new trial was made on the ground that the damages were excessive. Such a point not having been presented by motion for new trial, it cannot be raised here on appeal. Hilton v. Hymers, 57 Nev. 391, at pages 405, 406, 65 P. (2d) 679.

■ Appellant complains of the action of the trial court in permitting impeachment of the witness Burt A. Reed. The witness was the largest stockholder in the corporation, and claimed that he personally placed a warning sign on the door to the toilet prior to the accident. But it was shown that prior to the trial the witness had threatened to defend the action by showing that the

respondent was drunk and stepped into the hole, and that he, said Reed, attempted to secure testimony along that line, but on the trial failed to rely on said defense. This conduct was inconsistent with the defense and testimony that he, said Reed, had placed a warning sign on the door, and was a proper subject of cross-examination and within the rules.

"A witness may be impeached as to credibility by showing conduct on his part inconsistent with his testimony." 70 C. J. 771. See also, 70 C. J. 782; 70 C. J. 813; 28 R. C. L., pp. 614, 633.

■ It is appellants' position that the respondent was a licensee or mere trespasser, and that appellants owed him no further duty than not to willfully injure him. The evidence clearly establishes that the relation of landlord and tenant existed between the I. X. L. Laundry Company and the Reno Towel and Linen Service, Incorporated; that the toilets were to be used in common by both companies, the toilets being under the control of the landlord. The law is that in this situation the landlord owed a duty not only to the tenant and its employees, in the maintenance of the toilets in a safe condition, but also to the guests and invitees of the tenant. 36 C. J. pp. 212, 224; 16 R. C. L., 1037, sec. 557; 16 R. C. L., 1039, sec. 558.

■ A landlord having furnished toilet facilities to his tenants, sets up an implied invitation to those coming upon the premises, with the intention of transacting business with the tenants, to use the toilets, and the obligations in connection with said implied invitation are well covered in the following case: Peebles et al. v. Exchange Bldg. Co., 6 Cir., 15 F. (2d) 335, at page 338.

Cases dealing with the liability of a proprietor to a customer, or of a landlord to his own guest, or a tenant to his own guest, do not come under the same rule of law as that making a landlord liable to the guests of his tenant. Restatement of the Law, 2 Torts, Negligence, sec. 360, p. 978.

Older cases held that a proprietor was not liable to a customer for injuries received in a toilet, but the conditions which controlled in the formulation of the opinions therein expressed have been outmoded, and new business methods, in striving for the patronage of customers, hold out many attractions, and, as said by counsel for respondent, "not the least of which is the use of clean and attractive toilets." These changed conditions are reflected in the decisions. See M. N. Bleich & Co. v. Emmett, Tex. Civ. App., 1927, 295 S. W. 223, at page 227; Main v. Lehman, 294 Mo. 579, 243 S. W. 91; Thistlewaite v. Heck, 75 Ind. App. 359, 128 N. E. 611; Glaser v. Rothschild, 221 Mo. 180, 120 S. W. 1, at page 5, 22 L. R. A. (N. S.) 1045, 17 Ann Cas. 576.

From a consideration of the cited cases we deduce the rule to be that if a customer comes upon the premises of a proprietor at either his express or implied invitation, he has a right to use the toilets on the premises if he receives an invitation, either express or implied, from the proprietor, employee or the agent of the proprietor, providing the entry was made by the customer for the purpose of transacting business with the proprietor; that the entry was made at a reasonable hour, when business transactions are ordinarily conducted; and that the entry was made in an orderly manner and on business that the proprietor was interested in.

Where the landlord has leased or rented certain portions of his premises to tenants and has retained other portions of the premises under his possession and control, such as appears in this case, and the portions retained by the landlord are absolutely necessary to the portions leased or rented, and it can fairly be implied that the retained portions are an accessory or appurtenant to the premises, and were an inducement to the tenants at the time of leasing or renting said premises, under such circumstances the use of the appurtenant or accessory would not require a formal agreement, and the courts imply the use of these things to

be such that they form and become a part of the agreement to lease or rent that part of the premises actually leased or rented. It will be seen from the following cases that the courts were guided by the foregoing considerations as the underlying reason for holding the landlord responsible to the tenant's guests or invitees. Patten v. Bartlett, 111 Me. 409, 89 A. 375, 49 L. R. A. (N. S.) 1120; Crudo v. Milton, 233 Mass. 229, 124 N. E. 30; Hess v. Hinkson's Adm'r, 96 S. W. 436, 29 Ky. Law Rep. 762; Phillips v. Library Co., 55 N. J. L. 307, 27 A. 478.

All the circumstances in this case point to the fact that the I. X. L. Laundry Company intended that the Reno Towel and Linen Service, Incorporated, should have the use of the toilets located on its premises. No express provision was contained in the lease for the use of toilets, but the circumstances were such that it can be said the necessity was so strong as to make the demands of Reno Towel and Linen Service, Incorporated, for the use thereof appear reasonable, which brings the case within the exception noted in the cases cited by appellants. Those cases hereinbefore cited which deal with apartment houses and office buildings are held by appellants not to be applicable in this case, presumably upon the ground that a number of tenants were involved therein. We do not think the number of tenants to be controlling; it is the situation and circumstances involved in the particular case. Toilet facilities were necessary for the management and employees of the Reno Towel and Linen Service. It is fair to presume that the use thereof was an important factor in the decision to lease the premises and they were considered appurtenant thereto.

We next consider whether respondent, in going into an unlighted toilet room, was thereby contributorily negligent, as a matter of law. As to the condition of the room, respondent testified as follows:

Direct examination:

"Q. You say you walked into it what did you do in the way of use of it? A. I went in—I walked into it and I could see the white bowl of the lavatory, and I walked up and put my right foot down and I went to put my left foot along side of the bowl by the side of it as you naturally would do and it went down somewhere pretty close to my knee.

"Q. How did you make your entrance into that rest room? A. Yes—how do you mean—in what way?

"Q. Did you unlock any doors? A. No, there was no door closed the door was wide open.

"Q. How large a room was that approximately? A. I would say the room was in a small 'L' shape. The toilet bowl is back in the recess and straight from the toilet to the bowl I would say was in the neighborhood of six feet."

Cross-examination:

"Q. Was there any condition unusual? A. None only it was too dark.

"Q. Too dark? A. Yes, sir.

"Q. That was the first time you ever went into it? A. Right.

"Q. When you went to the door you say the door was open? A. Yes.

"Q. Was it dark in there? A. Yes.

"Q. Was it so dark that you could not see anything? A. I could see the toilet bowl—I could see the white outside of the bowl and that was all I was interested in.

"Q. Could you see anything else in there—anything unusual in there? A. No, sir.

"Q. Did you see the wash bowl? A. No, I did not look for it. I saw what I was after and walked straight to it.

"Q. As you entered the place it was extremely dark, was it? A. It was quite dark.

"Q. No light in the room? A. No, sir.

"Q. Any light coming from outside or from the open

door?   A.   What little light was coming in through that passage way.

"Q.   Was there any steam in the room?   A.   No, sir, not to my knowledge, I did not notice any.

"Q.   Did you see anything at all about the place that might put you on notice that there might be some danger there?   A.   Not a thing in the world."

The respondent did not proceed in total darkness. The reflection of light in the room was sufficient for him to see the toilet bowl and to proceed to it.   We think, under all of the circumstances here, that the question was one for the trial court to determine, and on the evidence presented the court was justified in finding that the danger was not obvious.   See Nevada Transfer & Warehouse Co. v. Peterson, 60 Nev. 87, 99 P. (2d) 633, at page 638; Totten v. Phipps, 52 N. Y. 354; Marwedel v. Cook, 154 Mass. 235, 28 N. E. 140; Feinstein v. Jacobs, 15 Misc. 474, 37 N. Y. S. 345; Restatement of the Law, 2 Torts, Negligence, sec. 347, p. 950.

Judgment affirmed.