**KING et al. v. YANCEY.**

No. 10775.

Circuit Court of Appeals, Ninth Circuit.

Feb. 7, 1945.

Rehearing Denied March 26, 1945.

Clyde D. Souter, of Reno, Nev., for appellants.

E. F. Lunsford and Bert Goldwater, both of Reno, Nev., for appellee.

Before DENMAN, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

Appellants sued in a Nevada court to recover damages for personal injuries sustained by appellant Jessie F. King. Upon removal of the cause for diversity of citizenship the complaint was ordered dismissed for failure to state a claim on which relief can be granted. The appeal is from the judgment of dismissal.

Appellants are husband and wife. In this opinion the husband will be referred to as King and the wife as Mrs. King. The complaint recites in detail the evidentiary facts leading up to Mrs. King's injury. Following is a summary of the allegations of the pleading:

The defendant is engaged in the insulation of structures and has a business house at Reno. King had long been in his employ as a solicitor. In the regular course of his employment King worked out of the business house of the defendant, reported there, arranged his material there, and used the defendant's building in the course of his work at all times when not actually in the field. He was provided with a key to the main entrance, and in the regular course

of his service for the defendant he entered the building at all times and on all days for the purpose of facilitating his work. On a Sunday morning in July 1942 he made preparations to call upon a prospective customer of the defendant at Bridgeport, California, to which place he was to travel by automobile. King is an elderly man, in very poor health, and is subject to falling asleep without warning. He requested Mrs. King to accompany him on the trip in order that she might aid and assist him should he have need of assistance, and Mrs. King agreed to accompany him for the purposes mentioned.

In pursuance of the arrangement Mrs. King went with King in his automobile to the defendant's place of business in order that King might obtain certain material and samples intended to be exhibited to the customer. King entered the establishment, leaving Mrs. King in the car. After a brief time he came out and told Mrs. King that the trip to the first point of stoppage would be long, that toilet facilities would not readily be available on the way, and suggested to her that she come into the building and make use of the toilet before starting on the journey. King thereupon re-entered the place to complete his preparations. Within a few moments Mrs. King joined him and said she thought it advisable to use the toilet as suggested. King was then in the front or office section, to the rear of which, and separated from it by a partition, was a sizeable room. The windows of the rear room were covered with a black paper which shut out all exterior light. King pointed in the direction of an opening in the partition and said "You will find the toilet in there. The door is partly open."

Thereupon Mrs. King entered the rear room and saw before her some twenty feet distant a partly open door which she took to be the door of the toilet. It was, instead, the entrance to a steep flight of stairs, leading downward, and being unprovided with a rail or other protective device. The toilet itself was further in the rear and was so situated that the entrance to it would not in the dim light be observed by one unfamiliar with the premises. Relying on the directions given her, Mrs. King stepped through the open door, fell down the stairway and was injured. The injury, so the complaint alleges, was the proximate result of the negligence of the defendant in failing, among other things, to keep his premises in a reasonably safe condition so that those invited to enter there would not be unnecessarily exposed to danger. The averments of the pleading in this respect need not be further developed. Enough to say that they exhibit a state of facts sufficient to carry the case to a jury on the issue of the negligent injury of an invitee, if the injured party be thought to have that status.

The trial court was of opinion that Mrs. King was a mere licensee, to whom the defendant owed no duty except to refrain from wilfully or wantonly injuring her.[1] Concededly the dismissal was error if, on proof of the facts pleaded, a jury might rationally have found that the woman was an invitee. Before turning to that problem it will clarify matters to note that for purposes of the inquiry King's status is solely that of an employee of the defendant. The fact that he was also the injured woman's husband and was joined with her as plaintiff is not material.[2]

In Seavy v. I.X.L. Laundry Co., 60 Nev. 324, 108 P.2d 853, a customer of a tenant of a building owner was injured while using a toilet in the control of the landlord. While there was no formal understanding between the landlord and the tenant to that effect, the toilet had been commonly used by employees of both, and on some occasions by people transacting business with the tenant. The tenant's customer was thought to have the status of an invitee of the landlord, so that the latter would be liable for injury resulting from want of ordinary care.[3]

Perhaps the most nearly analogous Nevada decision is Nevada T. & W. Co. v.

---

[1] Crosman v. Southern Pac. Co., 44 Nev. 286, 300, 194 P. 839.

[2] In Nevada, while the husband must join in a suit for injury to the wife, the damages recovered for the injury belong to the wife alone. Negligence or fault of the husband is no bar to recovery. Fredrickson & Watson Const. Co. v. Boyd, 60 Nev. 117, 102 P.2d 627.

[3] The court said, 60 Nev. at page 333, 108 P.2d at page 857 of the opinion:

"From a consideration of the cited cases we deduce the rule to be that if a customer comes upon the premises of a proprietor at either his express or implied invitation, he has a right to use the toilets on the premises if he receives an invitation, either express or implied, from the proprietor, employee or the agent of the proprietor, providing the entry was made by the customer for the purpose of transacting business with the proprietor; that the en-

Peterson, 1940, 60 Nev. 87, 94, 89 P.2d 8, 99 P.2d 633, 636. There an employee engaged in work in a warehouse asked his wife to bring him a flashlight. The employee had previously been directed by the employer not to ask the wife to come on the premises. After the woman entered the building she was requested by a night watchman, who had charge of the warehouse, to go to the office and remain there while a truck driver was using the telephone, the watchman being himself at the moment otherwise engaged. The woman was injured while thereafter leaving the building as directed by the watchman. The court was of opinion that she was an invitee. It said that "one in charge of premises has authority to do thereon any reasonable act to accomplish the discharge of his duties." An additional reason for believing that the watchman had implied authority to invite the woman to the office was found in the fact that her going there was for the benefit of the warehouse owner. The court quoted from 45 C.J. 812 to the effect that "an invitation is implied where the entry on, or the use of, the premises is for a purpose which is, or is supposed to be, beneficial to the owner or occupant."

■■ In the Peterson case, supra, the court cited and followed the reasoning of Smith v. Pickwick Stages System, 113 Cal. App. 118, 297 P. 940, 943. The California decision may therefore be taken as authoritative. There, the plaintiff entered a stage depot to meet her mother, who was an incoming passenger. The two met in the waiting room where it developed that the mother had lost her purse. The women then went into the unloading room where the stages enter and where passengers are discharged and were invited by the driver to look for the purse in the stage. Upon emerging from the stage the plaintiff was struck by a suitcase negligently tossed down by the driver.

The court said: "In entering the 'loading room' and the stage, plaintiff was there as one of three classes of persons: A trespasser, licensee, or an invitee. If there without the knowledge or consent of the master or servant, she was a trespasser; if there without the knowledge of the master, but with the knowledge of the servant who had no authority to invite her, she was a mere licensee; but if there with the

consent of the master or with the consent of the servant, having authority, express or implied, to grant the privilege, she was an invitee." It was assumed that the driver, in view of the nature of his duties, did not lack authority to grant plaintiff the privilege of entering the loading room and the stage. Plaintiff's legal status was, therefore, held to be that of an invitee in the loading room. As such, she was thought entitled to ordinary care at the hands of appellant's servant, whose omission was binding on the master. The status was thought to be that of an invitee for another reason, namely, that in aiding in the search for the lost purse plaintiff was engaged in a matter which was to the mutual advantage of appellant and its passenger.

■ A study of these holdings convinces us that the dismissal here was error. Authority of the employee to invite Mrs. King to use the toilet may reasonably be implied from the circumstances pleaded. Had the lady been along merely for her own benefit or recreation we may assume that the invitation would afford her no protection beyond that accorded a licensee; for in such posture of affairs no benefit to the defendant could be thought to flow from her presence, nor could a business relationship of any sort be rationally spelled out, cf. Babcock & Wilcox Co. v. Nolton, 58 Nev. 133, 140, 71 P.2d 1051. But Mrs. King's business for the day was to be of aid to the employee, a man old and ailing, in his arduous journey through a mountain and desert country. It is not unreasonable to believe that her proposed services would be of benefit to the employer, or at least that King supposed the arrangement was to the mutual advantage of the employer and himself.

Defendant argues that Mrs. King was not expected to perform any service at his place of business, but only to be of aid to her husband on a trip not yet really begun. However, the mission on which she had been induced to embark can hardly be viewed in so piecemeal a fashion. The use made of the premises, intimate and personal though it was, may well be thought a normal and necessary incident of the day's work—an item, so to speak, on the agenda of the trip.

Reversed.

try was made at a reasonable hour, when business transactions are ordinarily conducted; and that the entry was made in an orderly manner and on business that the proprietor was interested in."