HAROLD'S CLUB, A CORPORATION, APPELLENT, *v.* RAMONA G. SANCHEZ, RESPONDENT.

No. 3766

October 21, 1954.                    275 P.2d 384.

*Woodburn, Forman and Woodburn,* and *Peter Echeverria,* all of Reno, for Appellant.

*Ernest S. Brown* and *William L. Hammersmith,* both of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

Ramona G. Sanchez, while very drunk, was injured in attempting to enter upon the escalator in Harold's Club in Reno, Nevada. The court, sitting without a jury, made findings and entered a judgment in her favor, holding that defendant was negligent in not preventing her physically from using the escalator in her intoxicated condition. Defendant assigns this as error as placing it under a duty of care not warranted by the facts or the law applicable thereto. The pertinent facts are as follows:

On August 10, 1951 respondent had five or six drinks of double Scotch whiskey at the Golden Hotel, started gambling there and within about an hour and a half won $1,400. She gave $500 of this to Slim Yoncy, a former employee, to take back to the restaurant of which she was the proprietor. She continued to gamble and lost the remaining $900 of her winnings, returned to her restaurant, was informed that Slim had not deposited her $500 but was reported to be at Harold's Club gambling. She went to Harold's Club to find Slim, get her $500 back and continue gambling. When she entered the club it was immediately evident to a number of the club's employees, as well as to several of its patrons, that, to use their own expressions, she was "quite inebriated," she "staggered," she was "very intoxicated," she was not "in a position to properly take care of herself." She was six feet tall and weighed 278 pounds. Harold's Club is a gambling establishment maintaining gambling games and gambling devices of various kinds, both on the ground floor and on the second floor of the premises.

For the convenience of its patrons it maintains an escalator or moving stairway. The stairway is in constant motion, with a handrail at either side so connected with the stair mechanism that it moves with the same speed as the stairs. The establishment maintains five bars. The escalator in question was operating normally and was not in any respects in a defective condition. Except as to an occasional minor detail, the facts surrounding the accident are not in dispute.

Respondent neither purchased nor attempted to purchase any liquor at any of the bars at appellant's premises. Upon entering in her intoxicated condition she inquired of the pit boss as to where Slim was. She had gambled at Harold's Club for some four years and was well known to the employees. After her entrance, the bar supervisor followed her in order to be sure that no bartender served her any more drinks. She had come in the alley entrance and was moving across the club floor toward the front door. Before reaching the door however she turned toward the entrance of the up-escalator. A woman employee, stationed at a roulette wheel some eight feet from the base of the up-escalator, called to her, "I wouldn't get on there if I were you," and called the warning a second time. A man employee, seeing her turn toward the escalator, admonished her not to get on. She answered that some one upstairs was losing her money. He put out his hand but she went on. A third employee, a hostess at the club, observed respondent staggering and began to follow her, thinking that she might get into trouble. As hostess she often lent assistance to patrons who had had too much to drink. This hostess weighed 130 pounds. When it appeared that respondent was not going to the front door but toward the escalator, the hostess advised her that she was too drunk to get on the escalator. When asked if she made any attempt to stop the respondent with the use of physical force, she replied: "No, I didn't. I laid my hand on her arm when I was talking to her, and I said, 'Please

don't get on the escalator, Ramona.' She brushed me aside and kept on going." Elsewhere she testified: "She pushed me aside and went on going." Respondent started to enter upon the escalator, put her foot on the first step, was thrown off balance and fell. Two of the employees were close enough to reach out and catch her and ease her fall. She suffered a painful fracture of her left ankle and other injuries.

The learned trial judge, in his written decision, stated: "The vital question in this case concerns the duty of care owed by the owner of a gambling establishment in which there are five bars, to an intoxicated business visitor who intends to use a motor stairs on the premises." This remains the vital question presented to this court. Respondent argues that the law governing the use of elevators is applicable likewise to the use of escalators; that appellant was a common carrier of passengers and as such "was bound to use the utmost care and diligence for the safety of its passengers therein," and is liable for injury to a passenger "occasioned by its slightest negligence, against which human prudence and foresight should have guarded." Smith v. I.O.O.F., 46 Nev. 48, 205 P. 796; Seavy v. I.X.L. Laundry, 60 Nev. 324, 108 P.2d 853; Anno. "Injuries on Escalator," 152 A.L.R. 562. These and other similar authorities do not reach the specific question, as to whether the very high degree of care imposed includes the necessity for the use of force to prevent an intoxicated person from using an escalator. Respondent relies strongly on Fox v. Michigan Central R. Co., 138 Mich. 433, 101 N.W. 624.

Respondent also cites a 25-page annotation on "Carriers—Intoxication of Passengers" at 17 A.L.R.2d 1085, cites a number of the cases therein collected and quotes the annotator's notes in support of the contention that the carrier's duty of due care owed to an intoxicated passenger included that of physical restraint where the passenger placed himself in a position of danger to the

knowledge of the carrier's servants and where there was due opportunity to rescue the passenger from his position of danger, or otherwise prevent injury. In several of the cases where these conditions existed, there is indeed a strong implication that physical restraint should have been resorted to. None of the cases is factually in point here, and none of them is authority' for the conclusion that appellant in the instant case failed in its duty of care owed to respondent because it did not impose a physical restraint upon her. It is fairly deducible from the testimony that in her staggering but fairly rapid progress from the alley entrance, past the gambling tables, in the direction of the front entrance, defendant's first knowledge that Ramona intended to use the escalator was that obtained by the hostess. The hostess immediately warned her that she was too drunk to use the escalator, asked her not to do so and even put out a restraining hand but was brushed or pushed aside. We are at once confronted with the question as to the nature of the physical restraint that the 130-pound hostess was called upon to exercise as against the 278-pound respondent. Even if we assume that instead of the slight hostess we had the person of a "bouncer" of even greater weight and strength than the respondent, we are confronted with the further question as to the extent of physical restraint that would have been justified in order to protect respondent against the possible danger resulting from her use of the escalator in her condition. Other and varying suppositious situations suggest themselves. They all suggest the danger of establishing a precedent in such cases as this that appellant was under a duty to use physical restraint in order to absolve itself from a charge of negligence. No case cited to us has so held. The learned district judge had before him the picture of a huge gambling establishment, serving thousands of patrons daily, equipped with five bars, faced with the necessity for dealing with intoxicated as well as sober persons and necessarily required to exercise the utmost of care to see that its intoxicated patrons did not injure

themselves. Appellant points out that the trial court's decision is equivalent to holding that appellant was required to exercise a privileged battery upon respondent for her own protection, and that in no court of last resort has the theory of privileged battery been applied to such a case. Respondent has cited none such, nor have we found any. Our conclusion is, as stated in Fox v. Michigan Central R. Co., supra, cited by respondent, that each case must stand upon its own particular circumstances, and that under the facts of this case, even the high degree of care imposed on appellant did not include the requirement that it use force to prevent respondent from entering upon the escalator.

Both parties have argued at considerable length, with citation of authorities, the status of respondent as a bare licensee, an invitee, a business visitor. She came to Harold's Club to get her $500 back from Slim Yoncy and to gamble it at appellant's tables. We do not find it essential to determine her status, for even assuming her status to be that of a business visitor, with the higher duty of care thereby imposed on appellant, we are of the opinion that such duty could not achieve the height of that imposed upon it by the court.

It is next contended that even if appellant could not be held to be negligent for its failure physically to prevent respondent from entering upon the escalator, it was nevertheless negligent in failing to stop the escalator and thus prevent the accident. The trial court did not find on this issue despite the great amount of testimony adduced upon the point. This testimony would, in our opinion, have been sufficient to support a finding either (1) that defendant had stopped the escalator at the earliest instant after it appeared that plaintiff was about to mount the same despite the protests of the defendant's employees, or (2) that, on the contrary, defendant had reasonable opportunity to stop the escalator in time to avoid the accident but failed to do so. Respondent relies upon the following language used in Goldsworthy v.

Johnson, 45 Nev. 355, 363, 204 P. 505, 507: "Assuming it to be true that the lower court was in error in the reasons given in its opinion for the judgment rendered, we would not be justified in reversing the judgment if a proper application of the law to the facts demands its affirmance. If the judgment is right upon any theory, even though it be upon one never thought of by the trial court, and is sustained by the findings and evidence, it is our duty to affirm it, for in so doing we do not have to lend approval to the mental processes of the trial court." In that case, however, this court held, in view of the entire testimony, that it would not be justified in overthrowing the trial court's findings to the effect that the transaction in question amounted to a gift causa mortis. Here however there was no finding. Respondent insists that the court's finding "that defendant had a clear opportunity to avoid the accident by the use of ordinary care" is the finding of the ultimate facts and that a finding of the probative facts that appellant failed to stop the escalator, having the opportunity so to do after receiving knowledge of respondent's dangerous situation, was not required; or, that if required, it must be implied or presumed. Murray v. Osborne, 33 Nev. 267, 111 P. 31.

But it is clear that the part of the finding above quoted was only part of the entire finding—nay, part of the same sentence which held that appellant's failure was in "not keeping plaintiff off the escalator." Expressions used by the court in its other findings, in its conclusions, and in its written decision all indicate clearly that the finding of defendant's failure to avoid the accident by the use of ordinary care referred definitely to its failure to keep respondent off the escalator, and without any reference to the factual issue of stopping or failing to stop the escalator. We are being asked to support the judgment by substituting other findings on the basis that there is some evidence to support such substituted findings. There is no justification for this in the rule relied upon by respondent.

As the judgment may not be supported on the theory of appellant's negligence in failing to use physical force to prevent respondent from entering upon the escalator, under the undisputed facts, and as there is nothing in the record from which we can infer or assume a finding that appellant was negligent in failing to stop the escalator, the judgment must be reversed with costs, and judgment entered in favor of defendant. It is so ordered.

EATHER, C. J., and MERRILL, J., concur.